IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JAMES J. KURYLO, | : | |
| --- | --- | --- |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 17-00004 |
| PARKHOUSE NURSING AND REHAB. | : | |
| CTR., LP | : | |

O'NEILL, J.                                                                                                                                April 3, 2017

**<u>MEMORANDUM</u>**

In the present case, plaintiff James J. Kurylo claims age discrimination, disability discrimination and retaliation by his former employer, defendant Parkhouse Nursing and Rehabilitation Center, LP. Defendant now seeks dismissal of plaintiff's claims of disability discrimination and retaliation. For the following reasons, the motion for partial dismissal will be granted in part and denied in part.

**FACTUAL BACKGROUND**

According to the facts set forth in the complaint, plaintiff James J. Kurylo is a septuagenarian who, during the time relevant to this action, was employed by defendant Parkhouse Nursing and Rehabilitation, L.P. Compl. ¶¶ 1–2. Plaintiff began his employment on August 25, 2014, as a part-time driver earning fifteen dollars an hour. Id. ¶ 7. Within a few months, defendant made plaintiff a full-time employee. Id. ¶ 8.

After one month of work, plaintiff's co-workers—Carl Talley and Naomi Hersch—began picking on plaintiff in the drivers' break room due to his age, calling him "pathetic old man," "old man" and other similar names. Id. ¶¶ 10–11. Plaintiff was more than ten years older than

the next closest worker or supervisor.  Id. ¶ 12.  Plaintiff's direct supervisor, Mike Hoch, witnessed these comments and laughed in approval.  Id. ¶¶ 9,13.  In an effort to keep his job, plaintiff tried to deal with the harassment, rather than going to Human Resources.  Id. ¶ 14.

From March 12, 2015 to March 23, 2015, a "stomach problem" caused plaintiff to miss work.  Id. ¶¶ 15, 17.  Plaintiff had sufficient sick and vacation time to cover his missed time from work, and he kept defendant informed of his missed days to avoid any no-call/no-show problems.  Id. ¶ 18.  Under defendant's policy, "if an employee is absent for 3 or more consecutive days, a physician's statement must be presented to return to work."  Id. ¶ 19.  In compliance with this policy, plaintiff obtained a physician statement from his treating doctor, Dr. Talamo of Talamo Family Practice Group, P.C., that explained that plaintiff was disabled from work from March 12, 2015 through March 23, 2015, but capable of returning on March 24, 2015.  Id. ¶¶ 16, 20.  When plaintiff attempted to give the note to his supervisor Hoch, however, Hoch replied that he did not want a doctor's note and the matter was "out of his hands."  Id. ¶ 21.

Plaintiff then attempted to give the physician statement to Jennifer Reimer in defendant's Human Resources department.  Id. ¶ 22.  Defendant still refused to place plaintiff back on the schedule and, instead, Reimer demanded that plaintiff complete Family Medical Leave (FMLA) paperwork.  Id. ¶¶ 23–24.  Because plaintiff had not worked for defendant for twelve months and had not worked 1250 hours between his hire date in August and leave in March, he explained that he neither wanted nor was eligible for FMLA leave.  Id. ¶¶ 25–26.  Nonetheless, Reimer replied that she wanted paperwork to decide whether plaintiff was being terminated.  Id. ¶ 26.

Dr. Talamo declined to complete the FMLA paperwork.  Id. ¶ 27.  Therefore, plaintiff returned it to defendant, who sent fax requests to Dr. Talamo's office, to no avail.  Id. ¶¶ 28–29.  On April 13, 2015, defendant sent plaintiff a letter that the FMLA paperwork had not been

completed pursuant to its written policy of a fifteen-day completion period, and if it was not completed by April 27, 2015, plaintiff would be terminated for job abandonment. Id. ¶ 30.

Plaintiff did not hear again from defendant and was never placed back on the schedule. Id. ¶ 31. Plaintiff was subsequently terminated from defendant's employment and significantly younger employees either replaced him or collectively undertook his job responsibilities. Id. ¶¶ 32–33.

Following administrative exhaustion of his charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and Pennsylvania Human Relations Commission (PHRC), id. ¶ 6, plaintiff commenced the current litigation on January 3, 2017. His complaint sets forth multiple claims as follows: (1) age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq.; (2) age discrimination under the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 953, et seq.; (3) disability discrimination and retaliation under the Americans With Disabilities Act (ADA) of 1990, 42 U.S.C. § 12101, et seq.; and (4) disability discrimination and retaliation under the PHRA. On February 13, 2017, defendant filed a motion to dismiss Counts III and IV of the complaint. Dkt. No. 5. Plaintiff responded on February 24, 2017.[1] Dkt. No. 8.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly,

---

[1] Plaintiff's counsel is advised to re-read his submissions to the Court before filing them. The introduction section of his brief belongs to an entirely different case.

3

550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id., quoting Iqbal, 556 U.S. at 679. The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id., quoting Iqbal, 556 U.S. at 679.

## DISCUSSION

### I. ADA and PHRA Discrimination Claims

Defendant first seeks dismissal of plaintiff's claims of disability discrimination on the ground that plaintiff has failed to plead facts showing that he is a disabled person within the meaning of the ADA and the PHRA. I agree and will grant the motion to dismiss.

The Americans With Disabilities Act[2] forbids employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim for employment discrimination under the ADA,[3] a plaintiff must demonstrate that he or she is a "qualified individual with a disability" within the meaning of the Act, and that he or she has suffered an adverse employment decision as a result of the discrimination. Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 511–12 (3d Cir. 2001). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "disability" is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or

---

[2] The ADA was amended by the ADA Amendments Act of 2008 (ADAAA), which took effect on January 1, 2009. Pub. L. No. 110–325, 122 Stat. 3553, 3559. In enacting the ADAAA, Congress has made clear that the "question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis[.]" ADAAA § 2(b)(5), Pub.L. 110–325, S. 3406, 122 Stat. 3553, 3554 (2008). Indeed, Congress has instructed that the term "disability" under the ADA "shall be construed in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [the ADA]." 42 U.S.C. § 12102(4)(A) (2009). Because the alleged acts forming the basis of plaintiff's disability discrimination claims occurred after January 1, 2009, these 2008 amendments to the ADA govern this case.

[3] I discuss only plaintiff's ADA claim because the analysis of an ADA claim applies equally to a PHRA claim. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996); Peter v. Lincoln Tech. Inst., Inc., 255 F. Supp. 2d 417, 430 (E.D. Pa. 2002). As such, any conclusions reached as to the ADA discrimination claim are equally applicable to the PHRA discrimination claim.

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Plaintiff's complaint sets forth two bases for satisfying the "disability" prong of the ADA: (a) his stomach condition limited him from performing major life activities, and (b) he was "regarded as" having a disability by defendant.[4] I address each standard individually.

### A. Limited Performance of Major Life Activities

Plaintiff first contends that his "stomach condition" substantially limited his major life activities and, therefore, qualifies as a disability. Plaintiff's argument is mistaken.

"An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[5] 42 U.S.C. § 12102(2)(A). After the 2008 Amendments, "the term 'substantially limits' [is to be] construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(i). The term "is not meant to be a demanding standard." Id. Therefore, to analyze a claim under the first subsection of the definition of disability, a court must first identify the specific life activities that the plaintiff claims are affected and determine whether those activities are "major life activities" under the ADA. See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306–07 (3d Cir.

---

[4] As plaintiff does not claim that he had a "record of" impairment, I do not address this prong of 42 U.S.C. § 12111(8).

[5] A major life activity can also include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. § 12102(2)(B).

1999). It must then evaluate whether the plaintiff's impairment substantially limits those major life activities. Id.

Nonetheless, "[n]ot every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(ii). While "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active," 42 U.S.C. § 120102(4)(D), "a temporary, non-chronic impairment of short duration is not a disability covered by the ADA." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012) (finding that the plaintiff's temporary lifting limitations, removed only four months after first imposed, was such a non-chronic impairment, and thus not an ADA-qualifying disability), quoting Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir. 2002); see also Kiniropoulos v. Northampton County Child Welfare Serv., 917 F. Supp. 2d 377, 385 (E.D. Pa. 2013); Butler v. BTC Foods Inc., No. 12-492, 2012 WL 5315034, at *3 (E.D. Pa. Oct. 19, 2012). Moreover, an injury or illness involving several months of limitation, without long-term or permanent effect, is not a disability under the ADA. Sampson v. Methacton Sch. Dist., 88 F. Supp. 3d 422, 436 (E.D. Pa. 2015).

The complaint in this case does not plead sufficient factual allegations to support an inference that plaintiff had an impairment causing substantial limitation on his ability to perform any major life activity. The complaint cursorily alleges that "a stomach problem" required plaintiff to miss work on March 11, 2015; plaintiff fell under the care of Dr. Talamo of Talamo Family Practice Group; and plaintiff missed work from March 12, 2015 through March 23, 2015. Compl. ¶¶ 15–17. It goes on to assert that the condition limited him from performing the major life activities of working, focusing, concentrating, standing and "other everyday life activities." Id. ¶ 73. Nothing in the complaint suggests, however, that the "stomach problem" was anything

other than a one-time occurrence with a limited recovery period. Nor does plaintiff suggest that any activity limitations continued past the two-week period that he was out of work or are expected to recur. O'Donnell v. Colonial Intermediate Unit 20, No. 12-6529, 2013 WL 1234813, at *6 (E.D. Pa. Mar. 27, 2013) (dismissing claim where complaint made "no plausible allegations identifying substantial limits on the major life activities affected by his mental health disorders, whether treated or untreated, that would satisfy the ADA's definition of a disability."). Quite to the contrary, plaintiff avers that he sought treatment only from his family physician and that his doctor cleared him to return to work on March 24, 2015. Compl. ¶ 16, 20. See Amiot v. Kemper Ins. Co., 122 F. App'x 577, 580 (3d Cir. 2004) (holding that plaintiff's conclusory statements that he was substantially limited in performing a major life activity were insufficient given that a doctor's note affirmed that plaintiff was capable of returning to work after seeking treatment). Based on these allegations, plaintiff's stomach problem is the very definition of a temporary, non-chronic impairment of short duration. Therefore, I cannot find that plaintiff has established a disability for purposes of the first prong of the ADA.

### B. "Regarded As" Disabled

Alternatively, plaintiff argues that he satisfies the pleading standards for an ADA claim because he has sufficiently pled that defendant "regarded" him as disabled. I disagree.

To adequately plead that an employer "regarded" an employee as having a qualifying disability, the plaintiff must allege (1) that the employer believed that a wholly unimpaired plaintiff had an impairment that substantially limited at least one major life activity, or (2) that the employer believed an employee's actual impairment to limit major life activities when it in fact did not. Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012), citing Tice v. Centre Area Transp. Auth., 247 F.3d 506, 514 (3d Cir. 2001). The definition of "substantially

limits" remains the same as it does in other parts of the statute. Tice, 247 F.3d at 514 (citation omitted). However, "to be covered under the 'regarded as' prong of the ADA the employer must regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled." Rinehimer, 292 F.3d at 381 (internal quotation marks omitted). Consequently, liability only attaches to a "mistake that leads the employer to think that the employee is substantially limited in a major life activity." Taylor v. Pathmark Stores, 177 F.3d 180, 192 (3d Cir. 1999).

Notably, where a plaintiff is only "regarded as" disabled, and does not suffer from any actual disability, the perceived impairment must not be "transitory and minor." 42 U.S.C. § 12102(3)(B) (noting that the "being regarded as having such an impairment" provision "shall not apply to impairments that are transitory and minor"). Transitory and minor impairments are defined as those with an expected duration of six months or less. 42 U.S.C. § 12102(3)(B). "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." Kiniropoulos v. Northampton Cnty. Child Welfare Serv., 917 F. Supp. 2d 377, 386 (E.D. Pa. 2013), quoting Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996). Rather, "the relevant inquiry is whether the impairment that the employer perceived is an impairment that is objectively transitory and minor." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 249 (3d Cir. 2014).

Plaintiff now argues that defendant's refusal to let him return to work until it obtained further information about his condition is sufficient to establish that defendant regarded him as disabled. Pl.'s Opp'n Mot. to Dismiss, ECF No. 8, at 7. While such temporal proximity between plaintiff's leave from work and his termination may be sufficient to establish causation, it does

not overcome the statutory prohibition on application of the "regarded as" provision to perceived impairments that are "transitory and minor." As noted above, the complaint pleads only that plaintiff had a "stomach problem" that caused him to miss approximately two weeks of work and that he was "regarded and perceived disabled" by defendant. Compl. ¶¶ 15–17, 74. He alleges no facts to suggest that defendant viewed this problem as ongoing or expected it to last more than six months. In fact, he concedes that he presented defendant with a doctor's note clearing him to return to work after two weeks. Id. ¶¶ 20–21. As the complaint allows no reasonable inference that his perceived impairment was anything other than transitory and minor, I will dismiss plaintiff's disability discrimination claims under the ADA and PHRA for failure to establish a disability.

### C. Leave to Amend

Plaintiff contends that, in the event his pleading is found to be insufficiently specific, he should be given the opportunity to amend. Defendant responds that plaintiff's inability to meet the threshold requirements for a disability under the ADA and PHRA suggests that any amendment to the complaint would not survive a renewed motion to dismiss. As I agree that granting leave to amend would be futile, I will deny plaintiff's request.

It is well-established that "[l]eave to amend shall be freely given when justice so requires." Saez v. Gen. Motors Corp., 305 F. App'x 844, 846 (3d Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2). If a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative amendment unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Dismissal without leave to amend is justified only on grounds of bad faith, undue delay, prejudice, and futility. Id. at 236. "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be

granted. Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008). The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. Id. The trial court may thus deny leave to amend where the amendment would not withstand a motion to dismiss. Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983).

In the present case, amendment is clearly futile. As set forth above, plaintiff's allegations supporting his ADA and PHRA discrimination claims have failed to satisfy the threshold requirement of a "disability." Although plaintiff asserts that he should be permitted to amend, he appears to concede that he would not be able to set forth factual allegations showing that his "stomach problem" was anything more than a one-time occurrence or a "transitory and minor" impairment. Indeed, in support of his request for leave to amend, he cursorily states that "[i]t is uncertain what specific information beyond Plaintiff's pleading would be necessary but if required, Plaintiff could provide medical records and examples of his disability. The fact that he missed weeks of work and then was prevented a return to work should be enough to support his termination was related to his disability." Pl.'s Opp'n Mot. to Dismiss 8. At no point does plaintiff suggest an ability to plead factual allegations about the long-term or substantially limiting nature of his condition. Because the mere addition of either factual allegations describing his stomach problem during the relevant two-week period or medical records of his treatment during that time would not legally establish a "disability" for purposes of the ADA and PHRA, I must deny leave to amend as futile.

## II.    ADA and PHRA Retaliation Claims

Defendant also seeks to dismiss plaintiff's ADA and PHRA retaliation claims set forth in Counts III and IV of the complaint. I find that these claims survive Rule 12(b)(6) review.

The ADA contains the following prohibition against retaliation:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).[6] To establish a prima facie case of retaliation under the ADA, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. Id. "If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. at 501.

"Unlike a claim for discrimination under the ADA, an ADA retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is 'disabled' within the meaning of the ADA." Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 759 n.2 (3d Cir. 2004) Rather, a plaintiff need only show that she had a

---

[6] The PHRA contains a substantially similar anti-retaliation provision. See 43 Pa. Stat. § 955(d). The Court of Appeals has held that the "PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) (citation omitted). As there is nothing in the language of Section 955(d) to warrant different treatment, I will apply the same federal standard to plaintiff's PHRA retaliation claim. See Rubano v. Farrell Area Sch. Dist., 991 F. Supp. 2d 678, 704 (W.D. Pa. 2014) (finding no difference between the ADA retaliation provision and the PHRA retaliation provision).

12

"reasonable, good faith belief that she was entitled to request the reasonable accommodation she requested." Id.

Defendant's motion conflates the standards for ADA discrimination and ADA retaliation and premises its entire argument on plaintiff's inadequate pleading of such a disability. As set forth above, however, a showing of a disability is not required for a retaliation claim. Taking the allegations of the complaint and all reasonable inferences therefrom as true, I find that plaintiff has adequately set forth a retaliation claim. Plaintiff requested a reasonable accommodation in the form of using his accrued sick and vacation time to cover his two-week medical absence. Compl. ¶¶ 17–20, 80, 95. Nonetheless, defendant declined to put him back on the driving schedule, demanded that he complete Family and Medical Leave Act paperwork that did not apply to him and terminated him approximately one month after his physician cleared him to return to work. Compl. ¶¶ 23–32. At this early stage of the litigation, such allegations are sufficient to survive Rule 12(b)(6) scrutiny. Accordingly, I will deny defendant's motion to dismiss the retaliation claim of Counts III and IV.

## CONCLUSION

In light of the foregoing, I will grant defendant's motion to dismiss plaintiff's ADA and PHRA discrimination claims in Counts III and IV respectively of the complaint. As the grant of leave to amend the complaint to plead such facts would be futile, I will deny plaintiff's request to amend. As to plaintiff's ADA and PHRA retaliation claims in Counts III and IV respectively of the complaint, I will deny the motion to dismiss.

An appropriate Order follows.